Estate of Ryan R. BALLARD by Colleen A. Dorrian, Administrator, and Colleen A. Dorrian, Individually, Appellants,

v.

HAZEL'S BLUE SKY and Hazel Jones, Individually, Appellees.

No. 01–1516.

Supreme Court of Iowa.

Nov. 14, 2002.

Bruce H. Stoltze of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis,

P.C., Des Moines, and Ward A. Rouse of Berg, Rouse, Spaulding & Schmidt, L.L.C., Des Moines, for appellants.

Thomas Henderson, John F. Fatino, and Drew Gentsch of Whitfield & Eddy, P.L.C., Des Moines, for appellees.

CARTER, Justice.

Colleen Dorrian, as parent and personal representative of decedent Ryan Ballard, appeals from an adverse summary judgment in an action seeking wrongful-death and loss-of-consortium damages from a liquor licensee doing business as Hazel's Blue Sky Diner (Hazel's).[1] Ballard was killed when, after having been served alcoholic beverages at Hazel's, he drove the truck he was operating into a utility pole. As his personal representative, Dorrian asserts on appeal that Ballard had a common-law claim that survives his death based on Hazel's sale of an alcoholic beverage to an underage consumer. As a parent she asserts that she has a loss-of-consortium claim against Hazel's under Iowa Rule of Civil Procedure 1.206 (formerly Iowa Rule of Civil Procedure 8). We disagree with both contentions and affirm the district court.

Prior to May 7, 1998, Dorrian, who was Ballard's mother, became aware that Hazel's was regularly serving him alcoholic beverages, often to the point of intoxication. As a result of this knowledge, she demanded of Hazel Jones that this practice cease. On May 7, 1998, Ballard, then nineteen years of age, went to Hazel's after getting off work. He was served and consumed a sufficient number of alcoholic drinks to become intoxicated. He left the premises and got into his truck to drive home. While driving home he lost control of the truck, went off the roadway, and collided with a utility pole. He died from massive head injuries sustained in the collision.

Hazel's filed a motion for summary judgment, contending that Iowa law does not provide a cause of action for wrongful death under the facts presented in the present controversy. It also asserted that Dorrian was not entitled to a loss-of-consortium claim under rule 1.206. The district court granted the motion and dismissed the action as to both of the named defendants.

## I. *Scope of Review.*

The scope of review on an appeal from the granting of summary judgment is for correction of errors at law. *Garofalo v. Lambda Chi Alpha Fraternity*, 616 N.W.2d 647, 650 (Iowa 2000); *Sankey v. Richenberger*, 456 N.W.2d 206, 207 (Iowa 1990). Summary judgment is only proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). The court views the undisputed facts in the light most favorable to the resisting party. *Garofalo*, 616 N.W.2d at 649; *Hildenbrand v. Cox*, 369 N.W.2d 411, 413 (Iowa 1985).

## II. *Whether Ballard had a Common Law Cause of Action Against Hazel's Which Survived His Death.*

Plaintiff urges that the district court erred in concluding that Iowa Code

---

1. The action was brought against both Hazel's Blue Sky and Hazel Jones. The petition alleges that Hazel Jones is the owner of Hazel's Blue Sky and a director, officer, and employee thereof. The district court granted summary judgment as to both defendants based on a liquor licensee status. The allegations of the petition might suggest that Hazel's Blue Sky was a licensee and Hazel Jones was an employee of the licensee. However, we do not consider any claim against Hazel Jones, individually, as a nonlicensee because that theory has not been asserted on appeal. Throughout our opinion, we will refer to the licensee entity or entities as Hazel's.

section 123.92, which is part of this state's dramshop legislation, preempts common-law claims against a liquor licensee that has sold and served alcoholic beverages to a person not of the legal age to purchase same. That claim is directly contrary to this court's holding in *Nutting v. Zieser,* 482 N.W.2d 424 (Iowa 1992).

The *Nutting* case also involved the sale to and consumption by a nineteen-year-old consumer on the premises of a liquor licensee. Like the decedent in the present case, the underage consumer of alcohol in *Nutting* caused serious injuries to himself. Based on our prior decisions in *Fuhrman v. Total Petroleum, Inc.,* 398 N.W.2d 807 (Iowa 1987), and *Connolly v. Conlan,* 371 N.W.2d 832 (Iowa 1985), we held that Iowa Code section 123.92 preempted the field of liquor licensee liability. *Nutting,* 482 N.W.2d at 425.

The personal representative argues that our decision in *Garofalo* has broken new ground with respect to the recognition of common-law causes of action against persons who furnish alcoholic beverages to individuals below the legal age for their consumption. Actually, *Garofalo* breaks no new ground in that respect. It only recognized that, in actions against social hosts or other persons who are not liquor licensees, section 123.92 does not preempt common-law claims. *Garofalo,* 616 N.W.2d at 653. That proposition was first recognized in *Blesz v. Weisbrod,* 424 N.W.2d 451, 452 (Iowa 1988), decided prior to the *Nutting* case. It was reaffirmed in *Sage v. Johnson,* 437 N.W.2d 582, 584–85 (Iowa 1989), also decided prior to *Nutting.* The plaintiff in *Nutting* sought to draw the same comfort from *Blesz* that Dorrian now seeks to draw from *Garofalo.* *Nutting* held, however, that, notwithstanding the recognition of common-law claims against social hosts and other nonlicensees, such claims are not cognizable against liquor licensees because the area of licensee liability is preempted by section 123.92. *Nutting,* 482 N.W.2d at 426. That holding controls the result in the present case.

■ Dorrian urges that under the interpretation of section 123.92 applied in *Nutting,* the statute denies her equal protection of the law in violation of both state and federal constitutions. A similar contention was made and rejected in *Fuhrman,* 398 N.W.2d at 810. We continue to adhere to the view expressed in that case that the legislature can limit recovery for alcohol-related claims against liquor licensees to a specified list of claimants. The district court did not err in granting summary judgment with respect to Dorrian's wrongful-death action.

### III. *The Rule 1.206 Claim.*

■ Our cases have consistently held that the age of majority for purposes of determining a right to recover for loss of services, companionship, and society under rule 1.206 is eighteen. *Counts v. Hospitality Employees, Inc.,* 518 N.W.2d 358, 361 (Iowa 1994); *Miller v. Wellman Dynamics Corp.,* 419 N.W.2d 380, 383 (Iowa 1988) (citing Iowa Code § 599.1). Dorrian's son, Ballard, was nineteen years of age at the time of the tragedy that took his life. Consequently, no claim is available to her under rule 1.206. She suggests that the age of majority should be otherwise in the present case because Ballard was disabled. We can discern no principled reason for allowing a parent to recover for loss of services, companionship, and society from a disabled adult child when they are not entitled to recover for such loss from a able-bodied adult child. The district court properly granted summary judgment on Dorrian's rule 1.206 claim.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**

All justices concur except LARSON, J., and LAVORATO, C.J., and STREIT, J., who dissent.

LARSON, Justice (dissenting).

I dissent from the majority's conclusion that Iowa's dramshop law preempts all common-law claims, even those that arise outside the narrow scope of the act. Unfortunately, the scope of the statute has been dramatically restricted in recent years, thus expanding the cases in which there is no liability for a provider of alcohol.[2] Those sellers whose acts fall outside the dramshop statute may provide alcohol with absolute impunity. This case is a good example of the socially unacceptable fallout from a legal system that ignores the dual reality of what is happening: (1) victims are denied any compensation, and (2) there is no effective deterrent under the facts of this case to persons providing alcohol illegally or negligently.

It should come as no surprise that potential civil liability is an effective deterrent to the negligent furnishing of alcohol. *The New Hope of Solution*, Presidential Comm'n on Drunk Driving, at 1–2 (Final Report 1984) [hereinafter Presidential Commission Final Report]. Alcohol-impaired driving is the number one killer of young people in this country. Presidential Comm'n Final Report at 1–2.

As I have observed before,

[t]he wisdom of legislation, or the lack of it, is not for us to decide. The parameters of the common law, however, are very much the responsibility of the court, and we have a constitutional mandate to "issue all writs and process necessary to secure justice" for Iowa's litigants. Iowa Const. art. V, § 4. The majority opinion abdicates our common-law responsibilities to the legislature

and sacrifices justice in the name of judicial consistency.

*Eddy v. Casey's Gen. Store, Inc.*, 485 N.W.2d 633, 638 (Iowa 1992) (Larson, J., dissenting). There is nothing in the dramshop statute that expressly preempts the field. Moreover, it is ludicrous to hold that the dramshop statute preempts the field even though the statute does not apply.

The "preemption" argument is a specious argument. [The dramshop statute] is purely a strict liability statute; it has nothing to do with actions based on negligence. It makes no more sense to say, as the majority does, that a strict liability statute "preempts" a suit based on negligent furnishing of alcohol than it does to say that adoption of strict liability under section 496A of the Restatement (Second) of Torts preempts a products liability claim based on negligence. This, of course, has never been our rule. Dramshop statutes such as Iowa Code section 123.92 and common-law suits are entirely separate concepts. The former imposes strict liability without proof of negligence or proximate case, while the latter requires proof of both.

*Eddy*, 485 N.W.2d at 639 (Larson, J., dissenting).

There are many other reasons for recognizing a common-law cause of action, and I have discussed them at length in *Eddy*. I incorporate them here as well.

I would reverse.

LAVORATO, C.J., and STREIT, J., join this dissent.

---

**2.** *See Eddy v. Casey's Gen. Store, Inc.*, 485 N.W.2d 633, 638 (Iowa 1992) (Larson, J., dissenting).